IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Gisela E. Wajnryb, | : | |
| Plaintiff, | | Civil Action 2:14-cv-0170 |
| | : | |
| v. | | Judge Graham |
| | : | |
| Carolyn W. Colvin, Acting | | Magistrate Judge Abel |
| Commissioner of Social Security, | : | |
| Defendant. | | |
| | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Gisela E. Wajnryb brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance Benefits.  This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Wajnryb maintains that she became disabled on September 22, 2010, at age 59, due to left sided body pain from pulled nerves from rectal stimulation.  (*PageID* 219.)

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge concluded that Wajnryb's cervical radic-ulopathy and peripheral neuropathy are not severe impairments;
- The administrative law judge's finding that Wajnryb can perform light work is not supported by substantial evidence; and

- The administrative law judge failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinion of Wajnryb's treating physician.

**Procedural History.** Plaintiff Wajnryb filed her application for disability insurance benefits on January 3, 2011, alleging that she been disabled since September 22, 2010. (*PageID* 188-91.) The application was denied initially and upon reconsideration. (*PageID* 130-57.) Plaintiff sought a *de novo* hearing before an administrative law judge. (*PageID* 158-59.) On May 29, 2013, an administrative law judge held a video hearing at which Wajnryb, represented by counsel, appeared and testified. (*PageID* 96-114.) A vocational expert also testified. (*PageID* 114-18.) On June 28, 2013, the administrative law judge issued a decision finding that Wajnryb was not disabled within the meaning of the Act. (*PageID* 64–76.) On December 20, 2013, the Appeals Council denied Wajnryb's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (*PageID* 53-56.)

**Age, Education, and Work Experience.** Plaintiff Wajnryb was born on May 21, 1951 and was 59 years old on the alleged disability onset date. (*PageID* 130, 188.) She has a high school education, with one year of college. (*PageID* 220.) She has past relevant work experience as an office clerk, file clerk and receptionist. (*PageID* 220, 225.)

**Plaintiff's Testimony.** The administrative law judge summarized Wajnryb's testimony at the hearing as follows:

At hearing, the claimant alleged an inability to work due to not being able to type and a decreased ability to use her voice due to her status post thyroid surgery in 1993 (Hearing Testimony). She alleged the surgeon either

caused a pinched nerve or cut a nerve in her neck causing these symptoms
(Hearing Testimony).

(*PageID* 69.)

> The claimant testified she is independent in bathing and dressing, does
> some cleaning, grocery shops once a week, and does laundry twice a
> week.  She goes up and down the basement steps twice a day and walks in
> her neighborhood when the weather is nice.  The claimant said she cannot
> work because she has not been able to keyboard in more than 20 years due
> to a pinched or cut nerve in 1993 and because part of her larynx was
> removed during thyroid surgery.  She cannot bend over because her back.
> The only medication she takes is for her thyroid and she has taken it since
> 1993.  She has had no treatment since 2011 except for chiropractic care.
> The claimant can sit for 10 to 15 minutes, stand for 10 to 15 minutes, walk
> for 10 to 15 minutes, and cannot lift more than a couple of pounds.  In
> February 2013, she worked for 2 to 3 weeks for a not for profit agency
> doing some filing where she did not have to bend over, she made copies,
> and acted as a receptionist (Hearing Testimony).

(*PageID* 72.)

> The claimant lives independently and is able to do a full range of activities
> of daily living, including her personal care, laundry, climbing the stairs,
> grocery shopping, and walking to the store (Hearing Testimony).  She
> alleged an inability to work due to an inability to type and problems with
> her voice, which began almost 20 years ago (Hearing Testimony).

(*PageID* 73.)

### **Vocational Expert's Testimony.**

The vocational expert classified Wajnryb's past employment as a file clerk as
light, semi-skilled work; an office clerk is generally performed at a light exertional level
but according to the vocational expert, Wajnryb actually performed this position at a
sedentary exertional level.  Wajnryb's past relevant work as a receptionist was perform-
ed at a sedentary exertional, semi-skilled level.  (*PageID* 115.)

3

The administrative law judge proposed a series of hypotheticals regarding Wajnryb's residual functional capacity to the vocational expert.  The administrative law judge asked the vocational expert to consider an individual with Wajnryb's vocational characteristics who was limited to light exertion with the following restrictions: she may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but may never climb ladders, ropes, or scaffolds.  (*PageID* 116-17.)  Based on the above hypotheticals, the vocational expert testified that  Wajnryb could perform her past work.  (*Id.*)

**Medical Evidence of Record.**[1]  The relevant medical evidence of record is summarized as follows:

---

[1]The record contains additional medical evidence including chiropractic treatment records for the period January 13, 2012 to June 20, 2013, and primary care records of Dr. Mains covering the period from October 5, 2011 through June 24, 2013.  (*PageID* 418-55.)  That evidence was not before the administrative law judge.  Rather, Plaintiff submitted it to the Appeals Council.  However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of the administrative law judge's decision.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007), citing, *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). At the end of Plaintiff's second contention of error, she briefly argues, "This case should be remanded to allow the ALJ to review the new and material evidence and establish an appropriate residual functional capacity that incorporates all of the Plaintiff's limitations as required by SSR 96-8p." (*See* Doc. 10 at *PageID* 465.)  However, she provides no argument or elaboration in this regard and has, therefore, waived such a claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation and internal quotation omitted);  *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

4

Grant Medical Center  On August 26, 2010, while crossing the street, Wajnryb was hit by a car traveling ten miles per hour.  (*PageID* 368.)  She was admitted to Grant Medical Center.  (*PageID* 360-85, 408-17.)  In the emergency room, she complained of back and lower extremity pain.  (*PageID* 410.)  CT scans revealed lumbar degenerative disk disease with spinal stenosis at L3-L4, L4-L5, and L5-S1 and diffuse idiopathic skeletal hyperostosis and degeneration of the cervical spine and thoracic spine fractures at T7, T8, and T9.  (*PageID* 374-81.)

Kallash Narayan, M.D., a neurosurgeon, was consulted on Wajnryb's care. (*PageID* 416-17.)  On examination, John J. Entwistle, D.O., the resident under Dr. Narayan's supervision, found that Wajnryb had 4/5 motor strength throughout her upper extremities bilaterally and full muscle strength in both of her lower extremities, and her reflexes were 2/4 bilaterally.  He diagnosed Wajnryb with a right pelvic fracture, a bilateral inferior pubic rami fracture, and thoracic spine fractures at T7, T8, and T9.  No acute neurosurgical intervention was noted at that time.  (*PageID* 417.)

Joaquin Castaneda, M.D., an orthopedic specialists, was consulted and diagnosed Wajnryb with a minimally displaced left inferior pubic ramus fracture and a possible "non to minimally displaced fractures of a right inferior pubic ramus and the anterior wall of the right acetabulum."  (*PageID* 300-01.)

Wexner Heritage Center  Wajnryb was admitted into Wexner Heritage Center for rehabilitation following her hospitalization.  (*PageID* 259-94.)  Wajnryb reported a history of hypothyroidism, thyroid cancer in 1993, and ovarian cancer in 1986.  (*PageID*

275.)  Her admitting diagnoses included right acetabular fracture, bilateral inferior pub-

ic rami fracture and thoracic spine fractures.  (*PageID* 262.) Wajnryb's rehabilitation in-

cluded physical therapy, which she began on September 10, 2010.  (*PageID* 263, 273- 76.)

Initially, she was observed to have decreased stride length, decreased cadence, decreas-

ed stance time, and decreased speed, and ambulation with a walker.  (*PageID* 263, 275.)

   When seen and examined at her bedside on September 13, 2010, Wajnryb com-

plained of pain below her knees.  She also complained that she does not sleep well due

to disturbance of nurses for pain medication, "but she does not want pain meds."

(*PageID* 265.)

   On September 14, 2010, Wajnryb was seen by an occupational therapist for

discharge planning.  She reported that she would like to return home, but stated she

cannot return home until she is able to tolerate sitting.  Wajnryb stated her home was

not walker accessible and no one was available to assist.  Wajnryb stated her pain

medication did not help.  The occupational therapist noted that Wajnryb appeared to

demonstrate "unstable behavior: states kitchen staff is purposely putting incorrect items

on tray and giving her items she is allergic to dieticians do not know what she is allergic

to, bugs in her room have contaminated her food."  Wajnryb expressed frustration with

not being able to tolerate picking items up off of floor.  The occupational therapist

explained the use of a reacher and offered a loaner reacher, but Wajnryb declined.  She

also stated that she was able to perform activities of daily living and toileting without

assistance. (*PageID* 288.)

6

On September 15, 2010, the physical therapist noted that he continued to encour-age Wajnryb to ambulate in the hallway to increase the time she spent out of her room, but Wajnryb refused to do so on her own and only did so during her physical therapy sessions.  (*PageID* 277.)  Wajnryb stated on September 17, 2010, that the physical therapy exercises were making her pain worse, and she would not continue with the exercises. (*Id.*) Wajnryb was discharged from physical therapy on that date due to reaching her optimal functional level with instructions on a home exercise program.  (*PageID* 282.) Wajnryb stated that she would not perform the home exercise program because it would cause increased bilateral lower extremity pain.  Wajnryb rated her pain at a level of 10 on a 0-10 visual analog scale, with pain radiating to the plantar surface of her left foot to her mid knee on her right side.  (*Id.*)  However, she was able to reach her am-bulation target distance of 200 feet independently.  (*Id.*)

On September 21, 2010, Wajnryb complained of constipation and refused any recommendations from the nursing staff; she also did not want any pain medication that night to see if it would help.  (*PageID* 394-95.)  The following day, Wajnryb had a rectal stimulation procedure to aid her constipation.  (*PageID* 395.)  That afternoon, Wajnryb refused her scheduled pain medication, stating, "I'm not in pain."  (*Id.*) Wajnryb requested Motrin the following evening.  (*PageID* 396.)  Wajnryb reported to the nurse on September 24, 2014, that she refused her scheduled pain medication, claim-ing, "I don't need it."  (*Id.*)  Wajnryb complained of generalized pain the next couple of days.  (*PageID* 397.)  By October 3, 2010, Wajnryb complained of pain from her toes up

to her face, describing it as "nerve pain;" the following day she denied pain.  (*PageID* 400.)  She continued to complain of pain on October 6 and 7, 2010, but she was able to ambulate independently with a steady gait the following day.  (*PageID* 401-02.)  She was placed on Neurontin for neuropathic pain.  (*Id.*)  On October 10, 2010, the nurse reported that Wajnryb denied pain.  (*PageID* 403.)  Two days later, on October 12, 2010, Wajnryb rated her generalized pain as 10/10, she was given pain medications and an hour later, reported 0/10 pain, and claimed she was "feeling a lot better."  (*PageID* 403-04.)  Plaintiff continued to report pain until she left Wexner on October 17, 2010 due to financial concerns.  (*PageID* 404-06.)

Joaquin Castaneda, M.D.  Dr. Castaneda examined Wajnryb on October 7, 2010, for follow-up on her pelvic injury.  She complained of pain "from her toes to her finger tips."  She feels this is due to the rectal procedure.  On examination, Dr. Castaneda found no specific motor deficits, and that Wajnryb gave "poor effort" in extending her left knee, and she was able to ambulate without a limp using a walker.  An x-ray of the hip showed no displacement of the fracture, healing where the earlier pelvic fractures were located, and "significant bilateral hip joint degenerative changes."  Dr. Castaneda concluded that he does not have a specific diagnosis for Wajnryb's recent increase in pain noting it does "not make much anatomical sense," and that "[o]therwise, she has no specific limitations."  (*PageID* 299.)

When seen on January 20, 2011, Dr. Castaneda found that her pelvis region was "fine," and that she had no pain in her hips, pubic symphysis, or her low back.  Wajn-

ryb had no pain with internal and external rotation of her hip joint, and had full range

of motion of her knees, toes, and ankles bilaterally.  She also had full strength in her

bilateral lower extremities.  An x-ray of Wajnryb's pelvis showed a healed fracture with

some excellent callus formation, baseline degenerative joint changes, and an "unusual

jagged appearance to the bone."  Dr. Castaneda reported that the healed pelvic ring

fracture was "completely stable" and her injury "should no longer inhibit any sort of

physical activity including work."  (*PageID* 298.)

William A. Mains, M.D.  Plaintiff treated with primary care physician, Dr. Mains

for complaints including nerve pain, weakness, paraesthesias, vertigo, back pain, and

stiffness.  (*PageID* 326-53.)  Dr. Mains diagnosed cervical radiculopathy,  idiopathic

peripheral autonomic neuropathy, chronic vertigo and associated gait disturbance.  (*Id.*)

Specifically, in March 2010, Wajnryb complained of malaise, weakness, and par-

esthesia.  On musculoskeletal examination, Wajnryb had 3/5 leg extensions.  Dr. Mains

diagnosed her with idiopathic peripheral autonomic neuropathy.  (*PageID* 338-39.) On

October 22, 2010, Wajnryb complained of malaise and paresthesias and asked for refills

of her Percocet, Neurontin, and metoprolol tartrate.  Dr. Mains assessed idiopathic per-

ipheral autonomic neuropathy and left cervical radiculopathy.  (*PageID* 328-29.)  When

seen in November 2010, Wajnryb reported that she stopped taking her medication and

her nausea went away, her nerve pain is "bad," but her bond pain she reported as

"better."  Dr. Mains found Wajnryb had normal range of motion and strength, as well

as no joint enlargement or tenderness.  Dr. Mains kept her diagnosis as left cervical

radiculopathy.  (*PageID* 326-27.)  In December 2010, Wajnryb saw Dr. Mains for a follow-up on medications, and she complained of malaise, joint pain, joint swelling, muscle cramps, muscle weakness, and stiffness.  Dr. Mains kept her diagnosis as left cervical radiculopathy.  (*PageID* 340-41.)

Dr. Mains examined Wajnryb after she fell on ice in February 2011, with complaints of back stiffness.  Dr. Mains found her right buttock collected hematoma.  He recommended heat and soaks to treat the hematoma but did not prescribe any pain medication.  (*PageID* 332-33.)

On March 29, 2011, Dr. Mains wrote that Wajnryb had been permanently disabled since her August 2010 accident.  He stated, "She suffers from chronic headache, facial pain from cervical neuropathy, [and] chronic vertigo with associated gait disturbance.  She is in chronic pain and unable to function in a work situation." (*PageID* 407.)

<u>Ohio Health Outpatient Rehabilitation.</u>  Wajnryb attended nine sessions of physical therapy throughout December 2010 and January 2011, aiming to decrease her pain and increase ease of daily living activities.  (*PageID* 309.)  On multiple occasions, Wajnryb was instructed to improve her sitting posture and to use firm chairs.  (*PageID* 311-12), but she continued to sleep and read on the couch.  (*PageID* 313, 318.)  She had poor compliance with treatment and required maximum vocal cues at each session.  (*PageID* 313.) The physical therapist reported that Wajnryb was able to sit for two hours working on her taxes and sit for one hour crocheting.  (*PageID* 315.)  The physical therapist

noted that Wajnryb was instructed on her poor body mechanics, but she noted, "That's how I always do it." (*PageID* 318.)

Sarah Long, M.D./Gary Hinzman, M.D.  On March 10, 2011, Dr. Long, a state agency physician, conducted a review of Wajnryb's medical records and determined that the medical evidence shows that Wajnryb's pelvis is healed and she was up and moving about.  While Wajnryb may continue to have discomfort associated with this injury, the records show that she has been released to do all normal daily activities.  The records do not show any complications associated with thyroid cancer.  While Wajnryb continues taking medication for her thyroid, this is not considered disabling under Social Security guidelines.  Wajnryb's pelvic injuries are not expected to last 12 months or longer as required by Social Security.  Therefore, Dr. Long concluded that Wajnryb is not disabled.  (*PageID* 130-35.)  On September 19, 2011, state agency reviewing physician, Dr. Albert reported that Wajnryb alleges neck pain, can't hold onto things with her left hand, left leg problem/weakness, and lower back pain.  Wajnryb refused to attend a consultive evaluation.  Dr. Albert concluded that there was insufficient medical evidence  to evaluate the prior/initial allegations and/or current allegations.  (*PageID* 141.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 22, 2010 through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq.*).

11

3.      Through the date last insured, the claimant had the following severe impairment: lumbar degenerative disk disease (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but may never climb ladders, ropes, or scaffolds.

6.      Through the date last insured, the claimant was capable of performing past relevant work as an office clerk, receptionist, and file clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant  was not under a disability, as defined in the Social Security Act, at any time from September 22, 2010, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(f)).).

(*Page ID* 69-76.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla." *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

12

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "take into account whatever in the record fairly detracts from its weight." *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff contends that the administrative law judge fail-

ed to find that Plaintiff's cervical radiculopathy and peripheral neuropathy are  severe

impairments.  According to Plaintiff, her medical records document an extensive hist-

ory of issues relating to her neck and back pain including previous cervical surgery,

cervical radiculopathy and peripheral neuropathy.  These impairments have had a

significant impact on Plaintiff's ability to perform basic work activities and there is

substantial evidence that the Plaintiff's cervical radiculopathy and peripheral neurop-

athy should be considered severe impairments.  (Doc. 10 at *PageID* 461-63.)  Plaintiff

next argues that the administrative law judge's finding that Plaintiff can perform light

work is not supported by substantial evidence.  Plaintiff argues the residual functional

capacity does not allow for Plaintiff's hand/arm weakness or limitations in Plaintiff's

range of motion and fails to accommodate Plaintiff's chronic pain, resulting fatigue and

inability to bend, stand or sit for long periods of time.  (*Id.* at *PageID* 463-65.)  Finally,

Plaintiff contends that the administrative law judge failed to comply with 20 C.F.R. §

404.1527 by failing to accord adequate weight to the opinion of Plaintiff's treating phys-

ician, Dr. Mains.  (*Id.* At *PageID* 465-68.)

> **Analysis.**

To be found disabled, a claimant must prove:

> an inability to do any substantial gainful activity by reason of any med-
> ically determinable physical or mental impairment which can be expected
> to result in death or can be expected to last for a continuous period of not
> less than twelve months.

42 U.S.C. § 423(d)(1)(A).  *See also* 42 U.S.C. § 1382c (a)(3)(A); 20 C.F.R. § 404.1505(a).

An administrative law judge follows a five-step sequential evaluation process

when evaluating claims of disability.  20 C.F.R. § 404.1520.  Step one includes an anal-

ysis of whether the claimant is engaging in or has engaged in substantial gainful activ-

ity.  If there is no substantial gainful activity, the evaluation progresses to step two.  At

step two, if the claimant does not have a "severe" medically determinable impairment

or combination of impairments significantly limiting her from performing basic work

activities, the claim is denied.  If it is determined that the claimant has a severe impair-

ment, step three requires that the claimant's impairment(s) be compared to those in the

Listing of Impairments at 20 C.F.R., Pt. 404, Subpt. P, App. 1.  If the impairment meets

or equals in severity a listed impairment, disability is conclusively presumed.  If not, the

claimant's residual functional capacity is assessed.  At step four, it is determined wheth-

er, considering the claimant's residual functional capacity , the claimant can return to

his or her past relevant work.  If the claimant cannot perform past relevant work, the

administrative law judge proceeds to step five.  Through the first four steps of this

14

evaluation process, the claimant bears the burden of proving his alleged disability.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Only at the fifth step

does the burden of production shift to the Commissioner.  (*Id.*)  At the fifth step, the

Commissioner has the burden of producing evidence that a significant number of jobs

exist in the national economy that the claimant , considering her age, education, work

experience, and residual functional capacity, remains able to perform. *See Brown v.*

*Yuckert*, 482 U.S. 137, 142 (1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  If

such evidence is produced and not rebutted, the claimant cannot be found disabled.

      As noted above, at step one, the administrative law judge found that Wajnryb

had not engaged in substantial gainful activity during the period from her alleged onset

date of September 22, 2010 through her date last insured of December 31, 2012.  (*PageID*

69.) At the second step, the administrative law judge found that Wajnryb had the severe

impairment of lumbar degenerative disk disease.  *Id.*

      An impairment is not considered severe when it "does not significantly limit

[one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

Basic work activities are defined as "the abilities and aptitudes necessary to do most

jobs," and include: (1) physical functions; (2) the capacity to see, hear and speak; (3)

"[u]nderstanding, carrying out, and remembering simple instructions"; (4) "[u]se of

judgment"; (5) "[r]esponding appropriately to supervision, co-workers, and usual work

situations"; and (6) "[d]ealing with change in a routine work setting." 20 C.F.R. §

404.1521(a)–(b).  Step two "has been described as 'a de minimis hurdle'; that is, 'an

15

impairment can be considered not severe only if it is a slight abnormality that mini-mally affects work ability regardless of age, education, and experience.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir.2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)).  "The goal of the test is to 'screen out totally groundless claims.'" *Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir.2008) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985)).

The administrative law judge explained that she did not find Wajnryb's diag-nosis of cervical radiculopathy to be a severe impairment because "there is no objective evidence supporting this diagnosis." The administrative law judge determined that after her accident, a CT scan revealed a lytic area at the base of C2 in the context of osteoporosis but this was never noted to be of concern or explored further.  (*PageID* 70, citing to *PageID* 371.)  The administrative law judge also found no abnormal examina-tion findings from Wajnryb's primary care provider, Dr. Mains or her treating special-ist, Dr. Castaneda to support this diagnosis.  The administrative law judge also found that Wajnryb was not compliant with a consultative examination in an attempt to help develop her case so there are no examination notes from a neutral medical source to support these allegations.   (*PageID* 71.)

The administrative law judge also explained why Wajnryb's peripheral neur-opathy was found not be severe,

> The claimant also fractured her thoracic spine in the accident.  She was
> initially given a TLSO brace for comfort and did not require any acute
> neurosurgical intervention.  Additionally, she refused a follow-up thoracic
> spine x-ray and appointment with the specialist.  There is no evidence that

16

the claimant ever sought follow-up treatment for her thoracic spine fractures.  Additionally, she was practicing poor postural maneuvers such as sleeping and reading on the couch and not utilizing the recommended harder surfaces.  Therefore, based on the claimant's lack of treatment, continued use of poor posture, and lack of objective evidence indicating her fractures did not heal, the undersigned finds they resulted in no more than minimal limitations in her ability to engage in basic work activities for a continuous period of 12 months or more and are nonsevere.

(*PageID* 70, citation to record omitted.)

Plaintiff argues that the evidence of record documents an extensive history of issues relating to her neck and back pain including previous cervical surgery, cervical radiculopathy and peripheral neuropathy.  (Doc. 10 at *PageID* 462.)  Wajnryb contends that based on the findings of treating physician, Dr. Mains and treating chiropractor at East Broad Chiropractic[2], she would have significant limitation in range of motion and chronic pain which are more than a slight abnormality and substantially affect her ability to perform basic work activities.

In considering treating physician, Dr. Mains's opinion, the administrative law judge reviewed the record and medical evidence before her and concluded that Dr. Mains's opinion was entitled to only "little weight."  (*PageID* 74.)  The administrative law judge did not give controlling weight to Dr. Mains's opinion, finding that, "Dr. Mains provided a conclusory opinion on disability, which is an issue, reserved to the Commissioner (Social Security Ruling 96-5p)."  (*PageID* 74.)  The administrative law judge noted that Dr. Mains did not provide any opinion on Wajnryb's functioning in

---

[2]The records from East Broad Chiropractic were not presented to the administrative law judge.  Please see footnote number 1.

17

vocationally relevant terms.  Furthermore, his treatment records do not support a finding of disability as they were limited to a finding of right lower motor weakness of 3/5 on one examination and only after Wajnryb stopped taking her medication.  (*See PageID* 326.)  Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence.  *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975).  20 C.F.R. §404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[3].  Finally, the administrative law judge found Dr. Mains's opinion to be inconsistent with the examination findings of Dr. Castaneda, who noted she had no specific motor deficits and put forth poor effort on prior examinations.  (*PageID* 74, citing to *PageID* 298-99.)  Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997).  However, '[i]t is an error to give an opinion controlling weight simply because it is the

---

[3]Section 404.1527(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  *See* §404.1505.  Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *See* §404.1508.

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); quoting, Soc. Sec. Rul. 96-2p.

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p. *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).

The administrative law judge noted that Dr. Castaneda's opinion is limited to Wajnryb's pelvic fracture and gave great weight only to the extent that it supports that Wajnryb's pelvic fracture is nonsevere. (*PageID* 74.) Additionally, the administrative law judge noted that Dr. Castaneda noted Wajnryb may be limited by her pain but did not provide an origin for the pain or an opinion in vocationally relevant terms as to how this pain may limit Wajnryb's functioning. Therefore, the administrative law judge assigned only "some weight, not great weight" to Dr. Castaneda's general opinion. (*Id.*)

The administrative law judge noted that she relied on Wajnryb's treatment records showing allegations of pain, but a lack of treatment, and noncompliance with physical therapy recommendations meant to improve Wajnryb's functioning when determining her pain would limit her to work at a light exertional level. (*PageID* 74.) Plaintiff argues that the administrative law judge failed to account for her difficulty bending, hand/arm weakness, chronic pain, fatigue, and inability to sit or stand for

19

extended periods.  (Doc. 10 at *PageID* 463-64.)  However, the administrative law judge limited Wajnryb to occasional balance, stoop, kneel, crouch, crawl, and climb ramps or stairs and never climb ladders, ropes, or scaffolds." (*PageID* 71.)

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's findings at each step of the sequential evaluation, including her ultimate decision that Wajnryb was not disabled under the Act.  At step two of the sequential evaluation, the administrative law judge properly determined the record does not support a finding that Wajnryb's cervical radiculopathy and peripheral neuropathy constitute medically determinable impairments.   I also do no find that the administrative law judge erred in rejecting the opinion of Dr.  Mains.  Finally, I find that the residual functional capacity as determined by the administrative law judge is supported by substantial evidence.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED**.  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel
United States Magistrate Judge