IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Gisela E. Wajnryb,

    Plaintiff,

    v.                        Case No. 2:14-cv-170

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

    Defendant.

ORDER

    Plaintiff Gisela E. Wajnryb brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits..  The ALJ reviewed the medical evidence in the record and held a hearing, at which plaintiff, accompanied by counsel, and a vocational expert testified. In a decision dated June 28, 2013, the administrative law judge ("ALJ") found that plaintiff had a severe impairment consisting of lumbar degenerative disk disease.  After considering the entire record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, except that claimant may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but may never climb ladders, ropes, or scaffolds.  The ALJ found that plaintiff was capable of performing past relevant work as an office clerk, receptionist, and file clerk.

    This matter is before the court for consideration of plaintiff's November 20, 2014, objections (Doc. 20) in response to the November 7, 2014, report and recommendation of the magistrate

judge (Doc. 19), recommending that the decision of the Commissioner be affirmed.  Defendant has filed a response to plaintiff's objections.  See Doc. 21.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").  Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation

omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Objections

A. ALJ's Assessment of Severe Impairments

The ALJ concluded that plaintiff had a severe impairment, specifically, lumbar degenerative disk disease. Plaintiff argues that the ALJ erred in concluding that plaintiff's alleged cervical radiculopathy and peripheral neuropathy[1] did not constitute severe impairments.

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis contained in 20 C.F.R. §404.1520. Step One requires the ALJ to determine if the claimant is engaging in substantial gainful activity. If the claimant is not, then Step Two of the analysis requires the ALJ to consider whether the claimant has a severe impairment. An impairment is not severe if it "does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1521(a). The phrase "basic work activities" means the abilities and aptitudes necessary to do most jobs, including, for example, physical functions such as

---

[1] Radiculopathy is a condition which is "essentially the compression of the nerves, sometimes known as a 'pinched nerve.'" *See Johnson v. Commissioner of Social Security*, 652 F.3d 646, 650 n. 1 (6th Cir. 2011). Peripheral neuropathy is "an affection of the nervous system." *See Jenkins v. Gardner*, 430 F.2d 243, 268 (6th Cir. 1790).

3

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and capacities for seeing, hearing, and speaking.  20 C.F.R. §404.1521(b).  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms.  *Rogers*, 486 F.3d at 243 (citing 20 C.F.R. §416.908); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997)(an individual's statements as to pain or other symptoms will not alone establish that he or she is disabled)(citing 20 C.F.R. §404.1529(a)).  If the existence of a severe impairment is established, then the ALJ must determine in Step 3 whether it meets or equals an impairment contained in the Listing of Impairments, 20 C.F.R., pt. 404, Subpt. P, App. 1.  If it does not, then the ALJ proceeds in Step Four to assess the claimant's residual functional capacity and to determine whether the claimant can return to his or her past relevant work.  During these first four steps, the claimant has the burden of proof. *Walters*, 127 F.3d at 529.

    The ALJ acknowledged that the treatment records of plaintiff's general physician, Dr. William A. Mains, M.D., contain a diagnosis of cervical radiculopathy.   PAGEID 70.   The ALJ noted that plaintiff claimed an inability to work because a surgeon allegedly caused a pinched nerve or cut a nerve in her neck during thyroid surgery which she underwent in 1993.  PAGEID 69.  The ALJ commented that plaintiff's "treatment records do not contain any objective evidence of a pinched or cut nerve or signs or symptoms relating to a cut nerve."  The ALJ referred to the treatment notes of Dr. Mains for plaintiff's December 15, 2010, visit.  PAGEID 73.  Despite the

diagnosis of left-side cervical radiculopathy, these treatment notes stated that plaintiff's neck and thyroid exam revealed no nodules, masses, tenderness or enlargement, and that her neck was supple. PAGEID 340. The ALJ stated that "there is no objective evidence supporting this diagnosis [of cervical radiculopathy]" and that there "are no abnormal examination findings from [Dr. Mains] to support this diagnosis." PAGEID 70-71. The ALJ further observed that plaintiff's "allegations of neck pain are unsupported by any objective evidence." PAGEID 73. The ALJ also noted the fact that plaintiff worked for several years at a level of substantial gainful activity after allegedly incurring a neck injury. PAGEID 70.

The medical record also reflects that on August 26, 2010, plaintiff was struck by a car traveling at ten miles per hour, and was admitted to Grant Medical Center complaining of back and lower extremity pain. PAGEID 360-85, 408-17. She was treated non-surgically by Dr. Joaquin Castaneda, M.D., an orthopedic specialist, for non- to minimally-displaced pubic and pelvic fractures, and was examined by a neurosurgeon and treated nonsurgically for thoracic spine fractures at T7, T8 and T9. PAGEID 300-01, 417. The ALJ noted that there were no abnormal examination findings by Dr. Castaneda which would support the diagnosis of cervical radiculopathy. PAGEID 71. The ALJ commented that a CT scan performed after the accident revealed a "lytic area at the base of C2 in the context of osteoporosis but this was never noted to be of concern or explored further[.]" PAGEID 70. The ALJ also observed that because plaintiff refused to attend a consultative examination with a state agency reviewing physician,

5

"there are no examination notes from a neutral medical source to support these allegations." PAGEID 71. The ALJ concluded that plaintiff's "cervical radiculopathy is a non-medically determinable impairment." PAGEID 71.

As to plaintiff's claim of peripheral neuropathy, the ALJ acknowledged that plaintiff complained of neuropathic pain symptoms even before her accident. PAGEID 72. The ALJ referred to the March 29, 2010, treatment notes of Dr. Mains, which indicated that plaintiff complained of neck pain, weakness, paresthesias and neuropathy, but she could use her upper arms and showed no acute distress. PAGEID 338. The ALJ observed that after the accident, plaintiff complained of pain and paresthesias during a visit to Dr. Mains on October 22, 2010, and asked for refills for Percocet, Neurontin and Metoprolol Tartrate. PAGEID 72. The ALJ noted that on November 19, 2010, plaintiff complained of weakness, nerve pain and paresthesias, and had decreased motor strength of 3/5 in her right lower extremity, but that plaintiff had stopped taking her medication at that time. Dr. Mains recommended physical therapy and prescribed Cymbalta for pain. PAGEID 72-73. The ALJ also commented that on December 15, 2010, plaintiff had stopped taking Cymbalta and was placed on Ultram. PAGEID 73. Dr. Mains' treatment notes indicate that plaintiff complained of joint pain and swelling, and muscle cramps, weakness and stiffness. However, as the ALJ observed, no abnormalities were noted on physical examination at that time. PAGEID 7, 340-41. The ALJ concluded that "there are few treatment records supporting these [neuropathic pain] symptoms." PAGEID 72.

The ALJ also looked at other medical records which might have

a bearing on plaintiff's alleged peripheral neuropathy.  The ALJ referred to the treatment notes of Dr. Castaneda, which indicated that plaintiff's pelvic and pubic fractures had healed after five months, that plaintiff had no pain in her hips, pubic symphysis or low back, that plaintiff walked with minimal difficulty, that she retained 5/5 strength in her bilateral lower extremities, and that she had no specific motor deficits, with good motor function of her feet.  PAGEID 70, 72.  Dr. Castaneda opined that the pelvic fracture should no longer inhibit any sort of physical activity, including work.  PAGEID 70.  Dr. Castaneda's treatment notes indicate that plaintiff had generalized pain complaints.  In plaintiff's lay opinion, these pains were caused by some type of nerve damage that must have occurred during a procedure performed on her in the rehabilitation facility to alleviate constipation.  However, as the ALJ observed, Dr. Castaneda indicated that he had no specific diagnosis for plaintiff's recent increase in pain from this procedure, as "[i]t does not make much anatomical sense." PAGEID 72, 299.  The ALJ also noted Dr. Castaneda's observation that, despite plaintiff's complaints of pain "everywhere," and particularly up her left leg, he observed no specific motor deficits, and concluded that plaintiff gave "a poor effort in terms of extending her left knee fully."  PAGEID  74, 299.  Thus, the ALJ concluded that plaintiff's pelvic fracture did not result in more than a minimal limitation on plaintiff's ability to work. PAGEID 70.

The ALJ also noted that plaintiff sustained fractures to her thoracic spine in the accident and was given a brace for comfort. However, plaintiff did not require any acute neurosurgical

intervention and she refused a follow-up spine x-ray and appointment with a specialist. PAGEID 70. The ALJ noted that there was no evidence that plaintiff ever sought follow-up treatment for her thoracic spine fractures. PAGEID 70. The ALJ concluded that there was a lack of objective evidence indicating that plaintiff's spine fractures did not heal, and that those fractures resulted in no more than minimal limitations on plaintiff's ability to work. PAGEID 70.

   The magistrate judge concluded that the ALJ properly concluded at Step Two of the sequential evaluation that the record does not support a finding that plaintiff's cervical radiculopathy and peripheral neuropathy constitute medically determinable impairments. Doc. 19, p. 20. This court agrees with that conclusion, and plaintiff's objection is denied.

B. Failure to Give Adequate Weight to Treating Physician Opinion

   Plaintiff argues that the ALJ failed to give adequate weight to the opinion of plaintiff's treating physician, Dr. Mains. The Commissioner has implemented regulations concerning how medical opinions, including those of a treating physician, are to be weighed. The Commissioner has also issued a policy statement, Soc. Sec. Rul. 96-2p, 1996 WL 374188 (Soc. Sec. Admin. July 2, 1996), to guide an ALJ's assessment of a treating-source opinion. Treating-source opinions must be given "controlling weight" if: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). The term "substantial evidence"

denotes a quality of evidence amounting to "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *3.

Even if the opinion of the treating doctor does not meet these "controlling weight" criteria, this does not mean that the opinion must be rejected; rather, it "may still be entitled to deference and be adopted by the adjudicator." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *1. If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on factors such as the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. §404.1527(c)(2)-(6); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner is required to provide "good reasons" for the weight given to a treating-source opinion. §404.1527(c)(2), (d)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242.

However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, F.App'x 543, 551 (6th Cir. 2010). An ALJ may accomplish the goals of the "good reasons" requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence

9

in the record.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439-41 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F.App'x 462, 470-72 (6th Cir. 2006).  An ALJ need not discuss every piece of evidence in the record for his decision to stand.  *Thacker v. Comm'r of Soc. Sec.*, 99 F.App'x 661, 665 (6th Cir. 2004).

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."

*Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006)(quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)(citations and internal quotation marks omitted)).  Further, an ALJ's failure to cite specific evidence does not indicate that it was not considered.  *Simons v. Barnhart*, 114 F.App'x 727, 733 (6th Cir. 2004).

In a one-paragraph letter dated March 29, 2011, Dr. Mains stated that, in his opinion, plaintiff was permanently disabled as a result of the accident, noting that plaintiff suffers from chronic headache, facial pain from cervical neuropathy, chronic vertigo with associated gait disturbance, and chronic pain; that she is unable to function in a work situation; that she was discharged from physical therapy without significant improvement, and that her medical treatment only gives her minimal relief.  PAGEID 407.  The ALJ summarized the treatment records from Dr. Mains in her decision, acknowledging that Dr. Mains was plaintiff's primary care provider.  PAGEID 72-73.  In doing so, the ALJ in

effect noted the length, frequency, nature, and extent of the treatment relationship and the treating source's area of practice. The ALJ then stated:

> [T]he undersigned gives little weight to the opinion of the claimant's primary care provider, William Mains, M.D., who, in March 2011, opined the claimant was permanently disabled because of this accident and she is in chronic pain and unable to function in a work situation (Exhibit 10F at 1). First, Dr. Mains provided a conclusory opinion on disability, which is an issue[] reserved to the Commissioner (Social Security Ruling 96-5p). He did not provide any opinion on the claimant's functioning in vocationally relevant terms. Furthermore, his treatment records do not support a finding of disability as they were limited to a finding of right lower motor weakness of 3/5 on one examination and only after the claimant stopped taking her medication (Exhibit 4F at 1). Finally, it is not consistent with the examination findings of the claimant's specialist [Dr. Castaneda], who noted she had no specific motor deficits and put forth poor effort on prior examinations (Exhibit 2F at 1, 2). Accordingly, the objective evidence of stenosis of her lumbar spine with no treatment does not warrant limitations beyond those outlined above.

PAGEID 74. The ALJ also stated that there was no objective evidence or abnormal examination findings from Dr. Mains or Dr. Castaneda which would support Dr. Mains' diagnosis of cervical radiculopathy, and that there were few treatment records or exam findings of physical abnormalities to support plaintiff's claims of neuropathic pain, weakness and paresthesias. PAGEID 70-74. A treating physician's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). The ALJ was also correct in noting that the conclusion of disability is reserved to the Commissioner. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

11

The reasons given by the ALJ for discounting the opinion of Dr. Mains are supported by the evidence in the case record, and are sufficiently specific to make clear on review the weight the ALJ gave to Dr. Mains' medical opinion and the reasons for that weight. The magistrate judge correctly concluded that the ALJ did not err in rejecting the opinion of Dr. Mains. *See* Doc. 19, p. 20.

C. Residual Functional Capacity (RFC) Finding

Plaintiff also objects to the finding of the magistrate judge that the ALJ's determination of plaintiff's RFC was supported by substantial evidence. A claimant's RFC is the most that a claimant can do despite his or her limitations. 20 U.S.C. §404.1545(a)(1). The ALJ is charged with determining a claimant's RFC. 20 C.F.R. §§404.1527(e)(2) and 404.1546(c). In making that determination, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184 at *7 (Soc. Sec. Admin. July 2, 1006). However, an ALJ need not discuss every piece of evidence in the record for his decision to stand. *Thacker*, 99 F.App'x at 665.

In this case, the ALJ found that plaintiff has the residual functional capacity to perform light work, except that she may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but may never climb ladders, ropes, or scaffolds. PAGEID 74. The ALJ concluded that this RFC was supported by plaintiff's reported activities of daily living, her lack of treatment, and her poor compliance when she did seek treatment. PAGEID 74. The ALJ

12

also considered the testimony of John R. Finch, a vocational expert, who testified that even with the additional restrictions in plaintiff's RFC, she would be able to perform her past relevant work of office clerk, file clerk and receptionist at a light exertional level.  PAGEID #75.

The ALJ first noted plaintiff's hearing testimony, in which plaintiff stated that: she is independent in bathing and dressing; does some cleaning, grocery shopping once a week, and laundry twice a week; goes up and down the basement steps twice a day; and walks in her neighborhood.  Plaintiff also testified that in February, 2013, she worked for two to three weeks as a volunteer for a non-profit agency, doing filing (for which she did not have to bend over) and copying, and acting as a receptionist.  PAGEID 72. Although plaintiff testified that she can only sit, stand or walk for ten to fifteen minutes, the ALJ noted physical therapy reports which stated that plaintiff was able to sit for two hours to do her taxes, and for one hour to crochet, and that she reported feeling better midway through her course of treatment and met her goals with upper extremity range of motion and grip.  PAGEID 72-73.

Plaintiff alleges that the ALJ failed to account for her alleged difficulty in bending, as well as her hand/arm weakness, chronic pain, fatigue, and inability to sit or stand for extended periods.  However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms of lumbar degenerative disk disease were not entirely credible.  PAGEID 72.  Under Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (Soc. Sec. Admin. July 2, 1996), the ALJ can weigh a claimant's credibility in considering a claimant's statements as

13

evidence bearing on the issue of disability. "[T]he extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements." SSR 96-7p, 1996 WL 374186 at *4 (Soc. Sec. Admin. July 2, 1996). Thus, in evaluating complaints of pain, and ALJ may properly consider the credibility of the claimant. *Walters*, 127 F.3d at 531.

The ALJ concluded that plaintiff's lack of treatment and the fact that there was little objective evidence to support her alleged symptoms undermined plaintiff's credibility regarding those symptoms. PAGEID 73. In commenting on plaintiff's lack of treatment and poor compliance during treatment, the ALJ noted: that while in the rehabilitation center following her accident, plaintiff denied that she was in pain and refused pain medication; that she stopped physical therapy on September 24, 2010; that she was noncompliant with the treatment recommendations of the therapists; that she did not request a follow-up visit with the neurosurgeon for her spinal fractures; and that, since 2011, she has had no treatment except for chiropractic care. PAGEID 72-73. The ALJ specifically commented on physical therapy reports indicating that plaintiff continued to sleep and read on the couch despite recommendations not to do so for spine alignment and support purposes. PAGEID 73. The ALJ noted the fact that plaintiff failed to pursue additional treatment from Dr. Mains after February, 2011, and that she declined additional evaluation by specialists and by the state agency physician.

The ALJ also observed that plaintiff's treatment records failed to reveal the type of significant clinical and laboratory

abnormalities one would expect if plaintiff were in fact disabled due to her lumbar degenerative disk disease.  PAGEID 72.  The ALJ noted that there were few treatment records for neuropathic pain symptoms.  PAGEID 72.  The ALJ also commented that plaintiff's complaints of weakness and paresthesias were not fully supported by the record.  PAGEID 74.  The ALJ noted that the alleged limitation in bending was appropriately accommodated in the RFC, and plaintiff's lack of treatment and her ability to live independently did not support the need for frequent breaks, as counsel suggested at the hearing.  PAGEID 74.

The court agrees with the finding of the magistrate judge that the RFC determined by the ALJ is supported by substantial evidence, *see* Doc. 19, p. 20, and plaintiff's objection to the RFC is denied.

### III. Conclusion

Having reviewed the record *de novo*, the court determines that there is substantial evidence supporting the ALJ's determination that plaintiff is not disabled, as defined in the Social Security Act.  The court hereby adopts and affirms the magistrate judge's report and recommendation (Doc. 19).  Plaintiff's objections (Doc. 20) are denied.  The Commissioner's amended motion for summary judgment (Doc. 17) is granted.  The Commissioner's decision is affirmed, and this action is dismissed.

Pursuant to Sentence Four of 42 U.S.C. § 405(g), the clerk shall enter final judgment affirming the decision of the Commissioner and dismissing this action.

It is so ordered.

Date: January 30, 2015            _____s/James L. Graham_____
                                  James L. Graham
                                  United States District Judge